# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

83 MAY 26 PM 3: 27

KAREN WILLIAMS,                    ]
                                   ]
    Plaintiff,                    ]
                                   ]
    vs.                           ]    CV 97-N-0269-S
                                   ]
AMERICAN CAST IRON PIPE            ]
COMPANY,                           ]
                                   ]
    Defendant.                    ]

ENTERED

MAY 26 1998

## Memorandum of Opinion

In this employment discrimination action, Karen Williams ("Williams") sues her employer, American Cast Iron Pipe Company ("ACIPCO"), under Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C § 2000-e, *et seq.* ("Title VII"). Ms. Williams alleges that ACIPCO failed to promote her because of her gender and retaliated against her for her prior participation in activities protected by Title VII. *Complaint* at ¶¶ 5-9.

The action is presently before the court on ACIPCO's motion for summary judgment as to all the plaintiff's claims. The motion has been fully briefed and was submitted at the court's regularly scheduled motion docket. Upon due consideration, the motion will be granted.

## I. Statement of Facts.[1]

On June 3, 1974, Williams began work at ACIPCO. *Williams Deposition* at Exhibit 5. From that time until July of 1989, she worked as a stenographer, secretary, departmental clerk, serviceman, and billing clerk. *Id.* In 1988, Williams filed a lawsuit against ACIPCO in the United States District Court for the Northern District of Alabama, alleging discrimination on the basis of gender. *Id.* at Exhibit 1 (*Williams v. American Cast Iron Pipe Company*, CV-88-C-0171-S (N.D. Ala. 1989)). On May 31, 1989, the Court entered a Judgment and Permanent Injunction in that lawsuit, permanently enjoining ACIPCO from discriminating against Williams because of her gender with respect to promotions and ordering ACIPCO to promote Williams to the job of Safety Technician. *Id.* Prior to filing her own lawsuit, Williams also participated as a member of a class of female employees in another lawsuit against ACIPCO, which ran concurrently with her individual action. *Id.* at 20-21 & Exhibit 2 (*Cox v. American Cast Iron Pipe Company*, CV-74-AR-0469-S (N.D. Ala. 1974)). Williams received a back pay award of $100,000 from this latter action. *Id.*

Effective July 24, 1989, apparently in response to an injunction in CV-88-C-0171-S, ACIPCO transferred Williams to the salaried position of Safety Technician in ACIPCO's Safety Department. *Id.* at Exhibit 5. Several weeks later, Williams had a conversation with the head of the Safety Department, Safety Supervisor Erwin Loebler ("Loebler"), who told her that her participation in prior lawsuits against ACIPCO would not be held against her.

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

*Id.* at 23-24. Williams has worked as a Safety Technician in ACIPCO's Safety Department from 1989 until the present. *Id.* at 9. In 1996, Williams was elected to ACIPCO's Board of Directors, representing the Company's salaried employees, and she continues to serve in that position. *Id.* at 32-33.

Williams attended the University of Montevallo from 1970 to 1973. *Id.* at Exhibit 5. Since 1982, she has taken various courses in chemistry, psychology, and computers at Wallace State Community College in Hanceville, Alabama. *Id.* Between 1974 and 1992, Williams took courses at ACIPCO in Basic Management Principles and Introduction to Supervision. *Id.* She has never obtained a college degree from either the University of Montevallo, Wallace State, or any other institution. Thus, she does not have a B.S. degree from an accredited four year college or university in industrial hygiene or any safety related curriculum *Id.* at 14-17.

In January 1993, ACIPCO created a new position in the Safety Department, the position of Assistant Safety Supervisor. The defendant asserts that it created the new position for the purpose of selecting someone to be trained to replace Loebler following his anticipated retirement. *Edge Affidavit* at ¶ 2. Furthermore, ACIPCO asserts that, because the position of Assistant Safety Supervisor was newly created, it was required to develop a job description for that position. *Id.* at ¶ 3. Williams states that, at the time ACIPCO created the position, no one told her that the reason for the position was to train a replacement for Loebler. *Williams Deposition* at 48-50, 71-72; *Williams Affidavit* at ¶ 4. She also states that the job description for the new position was the same as the functions

3

she was already performing as a Safety Technician, and, for that reason, no new job description was required. *Williams Deposition* at 9-14, 64-65, 71-72, 96-100, 112-113.

Vice President and Works Manager Arthur Edge ("Edge"), Industrial Relations Manager Mike Brand, and Loebler were responsible for creating the job description for the Assistant Safety Supervisor job. *Edge Affidavit* at ¶ 4. Edge testified that the job description was intended to reflect the responsibilities and qualifications of the Safety Supervisor job because ACIPCO expected that the person selected to fill the new position of Assistant Safety Supervisor would eventually be promoted to that position. *Id.* at ¶ 3. In other words, ACIPCO, in filling the new position, was in fact selecting the future Safety Supervisor. Edge also testified that, based on the growing complexity of the work in the area of employment safety and health, including increasing government regulatory requirements, ACIPCO determined that the job of Assistant Safety Supervisor would require a B.S. degree in industrial hygiene or a safety related curriculum from an accredited four year college or university. *Id.* at ¶ 4. Furthermore, Edge claims that college training in the areas of industrial hygiene and safety would help the individual in the job of Assistant Safety Supervisor better understand the background for rules and regulations promulgated by Federal and State agencies. *Id.* According to Edge, by understanding those regulations, the Assistant Safety Supervisor should be able to identify problems and develop safety programs to eliminate hazards in the work environment. *Id.*

On the other hand, Williams, citing a memorandum dated November 9, 1993, signed by Edge, contends that the real reason ACIPCO established the degree requirement for the new position was to deny her the opportunity to be considered for the position. In that

4

memorandum, Edge states, "The Assistant Safety Supervisor needs to be college trained in the areas of biological and physical sciences." *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at Exhibit 5. Williams contends that, based upon this memo, ACIPCO acknowledged "only that college level course work in biology and the physical sciences would be beneficial" for the person in the position of Assistant Safety Supervisor.[2] *Id.* at 3.

On February 9, 1993, ACIPCO posted the job of Assistant Safety Supervisor. *Williams Deposition* at 42-43 & Exhibit 4; *Barr Affidavit* at ¶ 2. The job posting and the related job description stated that the "minimum qualifications required" included "a B.S. degree from an accredited four year college or university in industrial hygiene or safety related curriculum." *Williams Deposition* at Exhibit 4. On or about February 10, 1993, Williams submitted a bid for the new position. *Id.* at 43-44 & Exhibit 5. At that time, she was aware of the college degree requirement for the position, and, of course, she was aware that she did not possess a B.S. degree in industrial hygiene or safety-related curriculum.

---

[2] The plaintiff neglects to mention that the cited memorandum was Mr. Edge's response to one of her grievances and not a description of all the position requirements. Moreover, she takes the quoted statement out of context. The entire memorandum was:

> The Assistant Safety Supervisor needs to be college trained in the areas of biological and physical science. Training in these areas will be necessary to take ACIPCO's Safety Program to the next level. Individuals with this type training will be better able to understand the background for rules and regulations promulgated by Federal and State agencies. Understanding the background for regulations will help in identifying trouble spots and developing preventive safety programs to eliminate hazardous working conditions and environments.
>
> Based on the regulations affected in the last ten years, the next ten years will bring additional and more complicated regulations. The area of biological science will receive more emphasis.

Apparently, the plaintiff would have the court infer from the memorandum that Mr. Edge used the phrase "college trained" to mean something less than a degreed program. Just as reasonable an inference would be that Mr. Edge used the phrase to refer to one who had earned a degree in one of those fields.

*Id.* at 41 & Exhibit 4. She was also aware that, since 1974, an increasing number of jobs at ACIPCO have required college degrees and that the nature of all of the work at ACIPCO has required more education for employees to do the work. *Id.* at 39-40. Although Williams does not view this trend as being negative, she applied anyway because, in the past, the company had changed the minimum qualifications of other positions and re-posted jobs after changes in minimum qualifications. *Id.* at 39; *Williams Affidavit* ¶ 3. She believed that the company might change the stated minimum requirements for this position as it had in the past for other positions. *Williams Affidavit* ¶ 3.

Manager of Employment Charles Stephens ("Stephens") was responsible for reviewing the educational backgrounds and work histories of applicants for the new position. *Barr Affidavit* at ¶ 4. Williams and Richard Herren, a male, were the only two then current ACIPCO employees to apply for the newly created position of Assistant Safety Supervisor. *Id.* at ¶ 3. Neither of them had earned a B.S. degree in industrial hygiene or a safety related curriculum, *id.*, and Stephens notified both that they did not meet the minimum qualifications for the job. *Id.* at ¶ 4.

On or about March 3, 1993, Williams received a memorandum from Stephens in which he stated:

Thank you for applying for the position of Assistant Safety Supervisor in our Safety Department. We were pleased to have had the opportunity to review your educational background and work experiences in detail.

Certainly, Karen, your eighteen years of work experience at ACIPCO is most impressive. I do not, however, find any mention in your personnel records or on your job bid application of having already earned a B.S. Degree from an accredited four year college or university in industrial hygiene or safety related curriculum, which is mandatory for this position. Thus, we are unable

6

to offer you encouragement toward filling subject job opening in view of our present required educational qualifications.

If I am incorrect in my assessment of your credentials, I would be pleased to hear from you—immediately please, since we will make a candidate recruiting decision within the next several weeks. Therefore, prior to any additional screening on your qualifications, I will need a copy of your college grade transcript showing completion of a B.S. Degree in either an industrial hygiene or safety related curriculum. If I have not heard from you by Wednesday, March 10, 1993, I will assume that our evaluation of your background and qualifications is correct.

Again, thank you for your interest in this position and good luck in all of your career objectives here at Acipco.

*Williams Deposition* at Exhibit 7. Williams did not respond to this memorandum. *Id.* at 47-

48. Although Williams believed that ACIPCO might change the qualifications for the job,

when she received Stephens' memorandum, she understood then that she would not be

further considered for the promotion to the newly created position. *Compare Williams*

*Affidavit* at ¶ 3 *with Williams Deposition* at 48.

Between March and October of 1993, no one at ACIPCO told Williams anything

differently about the minimum qualifications or that she might not be required to meet the

minimum qualifications. *Williams Deposition* at 52. But, Williams testifies that, in January

of 1994, Van Richey ("Richey"), President of ACIPCO, and Phillip Heard ("Heard") told her

about ACIPCO's "grandfathering" policy[3] when she asked them why Grant Bailey

---

[3] In its position statement in response to Williams charge of discrimination filed with the Equal Employment Opportunity Commission, ACIPCO addressed its "grandfathering" policy as follows:

The Company attempts to fill Department Head and Assistant Department Head jobs with qualified employees within that department. Whether there are college degree requirements for those jobs is dependent upon the area being supervised. Degree requirements have been added to jobs in most areas. When degree requirements have been added, those employees who entered the Department prior to the advent of the degree requirement have been "grandfathered." In most cases, "grandfathered" employees have voluntarily sought to upgrade

7

("Bailey") was promoted to Manager of Data Processing without a college degree. *Id.* at 48, 90-91, 110-112. According to Williams, Richey and Heard told her that Bailey was "grandfathered" into the position because of his extensive on-the-job experience. *Id.* at 110-112. Williams also testified that Richey and Heard told her that, in the future, the minimum requirements for the Assistant Safety Supervisor position would not include a B.S. degree requirement. *Id.* at 48-50, 71-72.

In her deposition, Williams testified that some ACIPCO employees had been promoted even though they lacked the minimum qualifications for the positions they sought. *Id.* at 25-26. According to Williams: ACIPCO promoted John Thomas to manager of the accounting department, and he did not have an accounting degree, *Id.* at 25.; promoted Lynn Hudson to assistant manager of data processing without a college degree., *Id.* at 25-26; promoted Jeanne Connell, a female, to assistant supervisor of production control without a degree, *Id.* at 26, 90; and, promoted George Ash to the position of buyer

---

their skills to meet the new requirements. In other cases, "grandfathered" employees have been bypassed by less senior employees who meet the degree requirement. In a few cases, a "grandfathered" employee has been deemed most qualified for a promotion despite the degree requirement. Although this is technically allowed under the "grandfathering" concept, it is very rarely found.

Historically, ACIPCO, because of its employee ownership, had a strong practice of promotions from within and giving uneducated people the opportunity to learn on the job. Part of the reason for this was the strong feeling that "this is our company and we want to give opportunities to those here." In the 1940's and 1950's, very few employees at ACIPCO had college degrees. In the mid to late 1970's, ACIPCO began recognizing that the world economy and worldwide competition required higher standards. In response, ACIPCO began upgrading its job requirements. As new degree requirements were established, current employees without degrees were not fired. They were allowed to stay in their jobs despite not having degrees.

*Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at Exhibit 4.

8

in the purchasing department without a college degree. *Id.* Ms. Williams stated that all those positions required colleges degrees.

Williams also testified that she knew of one occasion where ACIPCO posted a job, then withdrew the posting, and later re-posted it with different qualifications. *Id.* at 91. According to Williams, this occurred when Ben Thomas ("Thomas") bid to replace the retiring Mr. Heartline. *Id.* According to Williams, Thomas did not meet the qualifications of the position as it was first posted. *Id.* But, according to Williams, when Thomas complained, ACIPCO removed the posting. *Id.* Williams testified that she was told that the position would not be filled at that time. *Id.* However, according to Williams, several months later, the job was re-posted with different requirements. *Id.*

Williams was familiar with ACIPCO's job bidding process and the selection process, which is called the targeted selection interview process. *Id.* at 18. Williams was also aware that, after submitting a bid, the next step typically would be for ACIPCO to inform the applicant whether he has met the minimum qualifications for the job. *Id.* at 18-19. Williams was also aware that applicants who meet the minimum qualifications receive written notice and are scheduled for targeted selection interviews that lead to a final selection decision. *Id.* Williams has bid on five jobs at ACIPCO, and ACIPCO deemed her qualified and therefore scheduled targeted selection interviews for "two or three" of those vacancies. *Id.* Williams did not enter the targeted selection interview process for the Assistant Safety Supervisor position because she did not have the required minimum qualifications.

9

In selecting an Assistant Safety Supervisor, after it determined that both internal applicants were not qualified, ACIPCO considered external applicants.[4] *Barr Affidavit* at ¶ 5. In October of 1993, it selected Renee Denton Sellers ("Sellers"), a female, for the position of Assistant Safety Supervisor. *Id.*; *Williams Deposition* at 26-27, 40. Sellers has a B.S. degree in environmental health, a safety related curriculum, and she has a Master's Degree in Industrial Hygiene. *Edge Affidavit* at ¶ 5; *Barr Affidavit* at ¶ 5. Edge testified that, at the time ACIPCO hired her, Sellers had approximately two years experience in a heavy industrial environment similar to that of ACIPCO. *Edge Affidavit* at ¶ 5. On the other hand, Williams testified that Sellers told her that, prior to coming to ACIPCO, she "had several months as a co-op student with a company in Decatur" and " the last year she was at Sloss Industries as an engineering employee, they went on strike and she drove a truck for approximately a year." *Williams Deposition* at 99-100. In spite of the plaintiff's efforts to denigrate Ms. Sellers's work experience, it is undisputed that the position of Assistant Safety Supervisor had as a minimum requirement that the successful applicant possess a B.S. degree from a four-year institution in either industrial hygiene or a safety related curriculum. It is further undisputed that Ms. Sellers possessed a B.S. degree in environmental health as well as a M.S. in industrial hygiene and that Ms. Williams possessed neither.

---

[4] Williams asserts that ACIPCO "did not consider outside applicants" for seven months after it rejected her for the position of Assistant Safety Supervisor, but she does not cite any support in the evidentiary record for this contention. *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 4.

10

In the years 1993 and 1994, ACIPCO maintained an alternative dispute resolution program called Peer Grievance Review.[5] *Barr Affidavit* at ¶ 6. Under the Peer Grievance Review program, an employee could appeal certain management decisions and obtain a hearing before a panel of fellow employees. *Id.* In October 1993, Williams filed a peer review grievance form in response to her non-selection for the position of Assistant Safety Supervisor. *Williams Deposition* at 50-51, & Exhibit 8. In November 1993, she received a memorandum in response to her grievance stating that she did not meet the minimum qualifications for the Assistant Safety Supervisor position. *Id.* at 53 & Exhibit 9. Williams was told that her grievance did not meet the criteria for the peer review panel to hear the grievance. *Id.* at 94.

On November 24, 1993, Williams filed a second peer review grievance form, and on December 10, 1993, ACIPCO answered the grievance, again stating that Williams failed to meet the minimum qualifications for the job. *Id.* at 56-57, 62 & Exhibits 11 & 12. ACIPCO further explained that the peer review panel could not be used to challenge management's decision as to minimum requirements of a new position. *Id.* at Exhibit 12. When Williams filed a third grievance in December 1993, she was notified that her grievance would be heard by a peer review panel, but only because she claimed in her grievance that she met the qualifications for the job. *Id.* at 62-63 & Exhibit 13.

---

[5] Williams asserts that ACIPCO "maintained a process which gave the appearance of a legitimate 'alternative dispute resolution process' but which was, in fact, dominated and controlled by the company," but she does not cite any support in the evidentiary record for this contention. *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 5. Apparently, this position represents nothing more than the plaintiff's unsupported personal opinion.

11

A peer review hearing was held in January 1994. *Id.* at 63. On January 10, 1994, the

peer review panel issued its decision stating:

> After a thorough investigation and long deliberation, we feel the pre-requisite
> qualifications were applied fairly and consistently to you and the candidate
> selected to fill the current position of Assistant Safety Supervisor. However,
> we also feel you did not meet the qualifications for Assistant Safety
> Supervisor as set forth in the pre-requisite qualifications as posted on the job
> bid.

*Id.* at 66 & Exhibit 14. The peer review panel also recommended that job title be changed

to Assistant Safety Supervisor when Sellers became Safety Supervisor. *Id.* at 68 & Exhibit

15.

On January 28, 1994, ACIPCO's Board of Management responded:

> We will make a commitment to promote Karen to Assistant Safety Supervisor
> upon her obtaining a B.S. degree from an accredited four year college or
> university in industrial hygiene or safety related curriculum (proof of
> transcript required) within a reasonable time frame to be mutually agreed
> upon by Karen and the Board of Management.

*Id.* at 72-73 & Exhibit 16. Williams never met with the Board of Management to work out

a time schedule for completion of her degree and has never obtained the degree. *Id.* at

87. However, according to Williams, she could not meet this requirement without quitting

her job and moving out of town because "none of the area educational institutions provide

the type of degree specified by the company." *Williams Affidavit* at ¶ 5.

On February 9, 1994, Williams filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging unlawful employment

discrimination with regard to her not being selected for the Assistant Safety Supervisor job,

*Williams Deposition* at Exhibit 2, and, on September 30, 1996, the EEOC issued her a "right

12

to sue letter."[8]  *Id.* Prior to instituting this action, Williams had not participated in any litigation against ACIPCO since 1989.[7]  *Id.* at 22.

## II.     Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party

---

[8]ACIPCO cites Exhibit 17 of Williams Deposition for its assertion that "the EEOC issued written findings of no unlawful discrimination." *Defendant's Initial Submission in Response to Exhibit D of the Court's Order* at 11. However, Exhibit 17 of Williams' Deposition is not included in ACIPCO's evidentiary submission.

[7]Williams asserts that, while she has not initiated legal proceedings, she "had participated in various proceedings with regard to complaints by other employees, including Velma Waldrop and other individuals who were pursuing complaints of discrimination under Title VII." *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 6.  However, Williams does not cite any support in the evidentiary record for this contention.

13

support its motion with affidavits or other similar materials *negating* the opponent's claim."
*Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving
party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers
to interrogatories, and admissions of file,' designate 'specific facts showing that there is a
genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party
need not present evidence in a form necessary for admission at trial; however, he may not
merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c)
mandates the entry of summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party will bear the burden of
proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment,
the court must grant the motion if there is no genuine issue of material fact, and the moving
party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law
will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's
function is not himself to weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same
standard necessary to direct a verdict: "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-sided that one party

14

must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.  Discussion.

Ms. Williams makes two claims against ACIPCO arising out of her failure to obtain the position of Assistant Safety Supervisor. First, she asserts that ACIPCO refused to select her for the position because of her gender. *Complaint* at ¶ 8. Second, she claims that the decision to select another applicant was taken in retaliation for her past participation in protected activities under Title VII. *Id.* The court will consider and discuss each claim *seriatim*.

15

## A.    Gender Discrimination.

### 1.    Scope of the EEOC Charge.

The defendant asserts first that the plaintiff did not include in her EEOC charge an

allegation that ACIPCO discriminated against her on the basis of her sex. The court agrees.

A Title VII plaintiff can not bring claims that would not "reasonably be expected to grow

out of the charge of discrimination." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169

(11th Cir. 1988); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Turner

v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986). The logic of this rule is explained by the

Eleventh Circuit as follows:

> A charge of discrimination is not filed as a preliminary to a lawsuit. On the
> contrary, the purpose of a charge of discrimination is to trigger the
> investigatory and conciliatory procedures of the EEOC. Once a charge has
> been filed, the Commission carries out its investigatory function and attempts
> to obtain voluntary compliance with the law. Only if the EEOC fails to
> achieve voluntary compliance will the matter ever become the subject of
> court action. Thus it is obvious that the civil action is much more intimately
> related to the EEOC investigation than to the words of the charge which
> originally triggered the investigation. Within this statutory scheme, it is only
> logical to limit the permissible scope of the civil action to the scope of the
> EEOC investigation which can reasonably be expected to grow out of the
> charge of discrimination.
>
> A more exacting rule would be destructive of the logic of the statutory
> scheme, for it would impede the ability of the Commission to effect voluntary
> compliance. If an alleged discriminator knew that a particular issue which
> was the subject of EEOC conciliation efforts could never be the subject of a
> civil action, his incentive toward voluntary compliance would be lessened.

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

In her charge of discrimination, Ms. Williams stated: "I believe that the Respondent

has intentionally set minimum requirements for the job which I am qualified to perform in

16

order to deny me promotion to such jobs, (sic), including 'Assistant Safety Supervisor' and 'Safety Supervisor' *in retaliation* for my previous participation in suits against Respondent under Title VII." She then recited ten separate facts which she believed supported her "belief" that ACIPCO had discriminated against her. No where did she so much as suggest that she had been a victim of promotion discrimination based upon her sex. On the charge form she checked only the box for "retaliation," leaving blank that box for which "sex" discrimination could have included. There is no suggestion in the record that the EEOC expanded its investigation to include a charge of gender discrimination.

The claim based upon gender discrimination is outside the scope of the EEOC charge and the defendant is entitled to dismissal of the charge on summary judgment.

## 2.    Timeliness of the Action.

The defendant asserts that the gender discrimination claims are time barred. Under the statute, a charge of discrimination must be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e). Under the undisputed evidence, Williams knew of the degree requirements for the Assistant Safety Supervisor position when she applied for the job on February 10, 1993. ACIPCO clearly rejected her application for promotion in writing on or about March 3, 1993.[8] Williams admitted in her deposition that, when she received ACIPCO's rejection

---

[8] Williams argues, in her opposition to ACIPCO's motion for summary judgment, "There must be an actual 'vacancy' filed for the plaintiff to have a claim which can be pursued." *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 8. This may be true in a traditional failure to promote claim, but, as discussed above, Williams can not make out a *prima facie* case of failure to promote because the position she sought was filed with a more qualified female.

Williams cites *Batey v. Stone*, 24 F.3d 1330 (11th Cir. 1994), and *Wall v. Trust Co. of Ga.*, 946 F.2d 805, 809 (11th Cir. 1991), without explanation of why this precedent applies to the issue of whether Williams' claims are barred by the statute of limitations when neither of these opinions addressed a statue of limitations issue.

17

letter, she understood that she would not be considered for the position of Assistant Safety Supervisor. The plaintiff, however, did not file her charge of discrimination with the EEOC until February 9, 1994, almost one year after she was informed that she would not be considered for the new position.

The courts have held for many years that the purpose of the 180-day limitations period established by the statute is to protect employers from having to litigate stale claims and to encourage the prompt resolution of employment disputes. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980). Failure to file a timely charge with the EEOC operates as a bar to any action on the claim. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S. Ct. 1885, 52 L. Ed. 2d 571 (1977). The 180-day statute of limitations clearly runs from the "time of the discriminatory acts, not . . . the time at which the *consequences* of the acts become most painful." *Delaware State College*, 449 U.S. at 258. (emphasis in original). The question whether an EEOC charge is timely "turns on whether the discriminatory act has occurred within 180 days before filing, not on whether the effects of that discriminatory act are felt within 180 days of the filing." *Allen v. United States Steel Corp.*, 665 F.2d 689, 693 (5th Cir. Unit B 1982). Applying that principle, the Supreme Court found in *Ricks* that it was the decision to deny a college professor tenure, to be followed inevitably a year later by dismissal, and not the dismissal itself that was the discriminatory act. In order to assess the timeliness of the plaintiffs' EEOC charges, the court must

*Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 8.

18

"identify precisely the 'unlawful employment practice[s]' of which [they] complai[n]." *Delaware State College*, 449 U.S. at 257.

Here, it is clear that it was the decision to establish the degree requirement, Ms. Williams' lack of the stated qualifications, and ACIPCO's communication of its decision to her that it would not consider the plaintiff for the new position that constitutes the claimed discriminatory acts. Since the last of those occurred on March 3, 1993, and the EEOC charge was not filed until February 9, 1994, the claims based upon alleged gender discrimination are time barred.

Ms. Williams also claims that ACIPCO discriminated against her when it did not "grandfather" her into the position she sought as it had with other internal applicants for other positions in other departments. This alleged discrimination occurred, according to Ms. Williams, when ACIPCO rejected her application for the Assistant Safety Supervisor position. ACIPCO notified Williams that she would not be considered for the promotion on or about March 3, 1993. However, Williams testifies that she became aware of ACIPCO's alleged "grandfathering" policy and the alleged decision not to apply the policy to her in a conversation with Van Richey, the President of ACIPCO, in January of 1994. Therefore, according to Williams, the statue of limitations is equitably tolled because "a defendant should not be permitted to avail itself of an advantage created because of its own action and inaction." *Plaintiff's Response to Defendant's Statement of Facts and Response to Motion for Summary Judgment* at 8. Williams argues that the 180-day time limitation does not begin to run "'until the facts which would support a cause of action are

19

apparent or should be apparent.'" *Id.* (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)).

Even though Williams may not have been aware of the policy that ACIPCO calls "grandfathering" before January of 1994, she was aware of "the facts which would support a cause of action" on this claim. Williams testified that Richey told her about "grandfathering" when *she asked him* why Bailey was promoted to manager of data processing without a college degree. In her deposition, Williams also testified that she knew of other employees at ACIPCO who were promoted into positions when they did not meet the qualifications for the particular position. Thus, according to Williams own testimony she knew that ACIPCO "grandfathered" others into higher positions in the company, even if she allegedly did not know the terminology that ACIPCO used for this process until she met with Richey in January of 1994.

The evidence, however, while establishing that Williams knew of ACIPCO's "grandfather" practice, leaves some doubt about when the plaintiff may have learned of it. Therefore, as a matter of law, ACIPCO has not sustained its burden on summary judgment to show that this claim, alleging that ACIPCO did not "grandfather" her into the position she sought as it had with other internal applicants, is time-barred. Should the matter ever reach the trial stage, that question will be an open one for resolution by the court or jury, as appropriate.

### 3. The Merits of the Gender Discrimination Claims.

A plaintiff who alleges disparate treatment under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications,*

20

738 F.2d 1181, 1184 (11th Cir. 1984). The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by using the shifting burdens method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). A second means by which the plaintiff may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of gender discrimination on the part of ACIPCO. *See Early v. Champion Int'l Corp.*, 907 F.2d at 1081 (age discrimination case). The plaintiff has presented neither direct evidence nor statistical evidence of discrimination. She, therefore, is left to rely upon circumstantial evidence in an effort to establish a prima facie case of discrimination.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie

21

case of discrimination.[9] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring it to articulate a "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the

---

[9] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

defendant intentionally discriminated against her "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

To defeat the defendant's motion for summary judgment, the plaintiff must point to evidence that would either establish or create a genuine issue of material fact with regard to each element of her *prima facie* case of gender discrimination. A *prima facie* case of promotion discrimination is established by proving:(1) the plaintiff is a member of a protected minority; (2) she was qualified and applied for the position at issue; (3) she was rejected despite her qualifications; and (4) an employee with equal or lesser qualifications not a member of her protected group was selected to fill the position. *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 n.7 (11th Cir. 1983)(citing *Crawford v. Western Electric Co. Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980); and *Bundy v. Jackson*, 641 F.2d 934, 951 (C.A.D.C. 1981).

23

Here, the plaintiff cannot establish a *prima facie* case of promotion discrimination because there is no genuine issue of fact concerning whether the successful applicant was better qualified than was she and, without doubt, ACIPCO selected a person for the position who is also a member of the plaintiff's protected class. The undisputed evidence establishes that ACIPCO filled the newly created position of Assistant Safety Supervisor with Renee Denton Sellers, another female who held a Bachelor's Degree in environmental health, a safety related curriculum, and a Master's Degree in Industrial Hygiene. On the other hand, the plaintiff has no degree in any field. Academically, Sellers presented significantly higher qualifications.

An employer is entitled under the law to establish reasonable qualifications for any job provided such qualifications are reasonably related to the work to be done and are not imposed in order to cover discrimination. *See generally, Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 237-38 (5th Cir. 1974) (educational requirements for job qualification must be reasonably predictive of the ability to perform the requirements of the position.) By affidavit, Mr. Edge testified that the job's college requirement was established because of the increasing need to understand and deal with ever expanding federal and state regulatory safety requirements in a heavy industry such as ACIPCO. According to Edge, by understanding those regulations, the Assistant Safety Supervisor should be able to identify problems and develop safety programs to eliminate hazards in the work environment. It is important to remember that in hiring Ms. Sellers, ACIPCO was not merely hiring an Assistant Safety Supervisor. It was, in fact, hiring the future Safety Supervisor with the increased responsibility that such a position would entail.

The plaintiff offers nothing more than her own conjecture to support her claim that the degree requirement was unnecessary to the position of Assistant Safety Supervisor, that the requirement was established to eliminate her from consideration, or that she was better qualified than was Ms. Sellers. Conclusory allegations of discrimination, in the absence of evidence to support them, will not suffice to avoid summary judgment. *Isenbergh*, 97 F.3d at 444. Against the evidence offered by the defendant, the plaintiff's conjecture must fail.

Alternatively, a plaintiff can make out a *prima facie* case for failure to promote where, instead of hiring a male of less or equal qualifications, the defendant rejects the plaintiff and then continues to seek applications from persons of the plaintiff's same qualifications. *Wall v. Trust Co. of Ga.*, 946 F.2d 805, 809 (11th Cir. 1991). In this case, Williams can not make out a *prima facie* case under this alternative scenario either. The undisputed evidence is that ACIPCO set the qualifications for the position Williams sought and did not vary them. ACIPCO rejected a male applicant from within the company for the same reason, his failure to meet the minimum educational requirements, and at the same time it rejected Williams. The plaintiff has presented no evidence that ACIPCO ever considered anyone, male or female, who did not meet its minimum educational requirements for the job. Therefore, as a matter of law, Williams can not make out a *prima facie* case of unlawful gender discrimination for failure to promote.

As noted above, the plaintiff also claims that ACIPCO discriminated against her by not "grandfathering" her into the position she sought as it had with other internal applicants. To make out a *prima facie* case of disparate treatment, the plaintiff must demonstrate that "(1) she is a member of a protected class, (2) was similarly situated with

25

a person outside the protected class, but (3) was denied a condition of employment afforded that person." *Tompkins v. Morris Brown College*, 752 F.2d 558, 562 n.7 (11th Cir. 1985).

In this case, Williams has testified that ACIPCO promoted a number of individuals, both male and female, to positions for which they had allegedly not acquired the necessary educational background. However, Williams has neither alleged, nor has she offered evidence to support an allegation, that these individuals were "similarly situated" to her at ACIPCO. In fact, the record is void of any evidence that would permit the court to evaluate the bona fides of ACIPCO's requirement of college degrees for the positions filled by such other persons. For aught that appears with regard to those positions, ACIPCO management may have believed that college degrees would have been helpful but not really essential. On the other hand, with regard to the position of Safety Supervisor (and its heir apparent, the Assistant Safety Supervisor), ACIPCO clearly determined that a college degree in one or more specified areas would be, not merely useful, but important in dealing with expanding federal and state regulations and in taking the safety program to the "next level." The position to be filled was concerned with the safety of employees in a heavy industry. The other positions to which Williams would compare her own situation concerned positions that were not responsible for employee safety, i.e. (Grant Bailey, Manager of Data Processing), John Thomas (manager of the accounting department), Lynn Hudson ( assistant manager of data processing), Jeanne Connell (assistant supervisor of production control), and George Ash (buyer in the purchasing department).

26

Even if these individuals are appropriate comparators, Williams has testified that both males and females received this preferential treatment at ACIPCO. The evidence also shows without doubt that ACIPCO did not "grandfather" Richard Herren, a male internal applicant who, like Williams, lacked the necessary college degree. This evidence, instead of inferring discrimination against women in general or Ms. Williams in paraticular, has the opposite effect. It infers that ACIPCO applied its "grandfathering" policy equally to both males and females. The plaintiff cannot establish a *prima facie* case of discrimination in the refusal of ACIPCO to "grandfather" her into the new position despite her lack of qualifications.

Even if Williams could establish a *prima facie* case of discrimination on his disparate treatment claims, the defendant has articulated a legitimate nondiscriminatory reason for its decisions, the need for college training in particular specified areas, and the plaintiff has not produced evidence to create a genuine issue of material fact with regard to whether that reason was merely a pretext for discrimination.

**B.     The Retaliation Claim.**

Consistent with the timeliness analysis set out above regarding the plaintiff's promotion claims, her claim that the defendant retaliated against her for past participation in protected conduct is also time barred. ACIPCO definitively rejected Williams' application for that position on March 3, 1993, and Williams did not file her charge of discrimination with the EEOC until eleven months later. Therefore, based upon the undisputed facts, a claim by Williams for retaliation by refusing to promote her is time-barred as a matter of law.

27

Likewise, any claim that ACIPCO retaliated against Williams when it set the educational requirements for the position of Assistant Safety Supervisor, which had the effect of excluding Williams from consideration, is also time-barred. ACIPCO set the educational requirements for the position and posted them; Williams knew about them almost one year before she filed her charge of discrimination with the EEOC.

On the other hand, the court can not determine, based upon the evidence available, whether Williams knew or should have known of the alleged disparate application of ACIPCO's "grandfathering" policy. Construing the evidence so as to draw all reasonable inferences in favor of the plaintiff, the court can not say as a matter of law that the plaintiff's claim of retaliation in application of the "grandfathering" policy is time-barred.

To prevail on a claim of retaliatory failure to promote, Williams must first establish a *prima facie* case of retaliation discrimination by showing (1) participation in conduct protected by Title VII, (2) an adverse employment action simultaneously or subsequent to such opposition or participation, and (3) a causal connection between the protected activity and the adverse employment action. *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994). While Williams can show she participated in statutorily protected conduct, she has not produced evidence to create a genuine issue regarding whether there was a causal connection between the protected conduct and the adverse employment action.[10]

---

[10] It is a question of law to be determined by the court whether the plaintiff has established a *prima facie* case of discrimination. *See, Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533 (11th Cir. 1988).

The causal link requirement is broadly construed, the plaintiff being merely required to prove that the protected activity and the adverse employment action are not completely unrelated. *Meeks*, 15 F.3d at 1021. The plaintiff must offer some evidence that her protected conduct and the adverse employment action were not "wholly" unrelated. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Where there has a substantial lapse of time between the two events, there is less likely to be the required causal connection. While it is without doubt that ACIPCO knew of the plaintiff's participation in prior litigation, some four years passed between the two events. *See Valdez v. Mercy Hospital*, 961 F.2d 1401, 1403 (8th Cir. 1992) (no retaliation found where six months passed between protected activity and termination) (superseded by statute on other grounds); *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1549 (S.D. Fla. 1995) (elapse of six months between grievance and discharge did not permit inference of causal connection); *Juarez v. Ameritech Mobile Communications, Inc.*, 746 F. Supp. 798, 804 (N.D. Ill. 1990) (six months between complaint and termination too remote), *aff'd* 957 F.2d 317 (7th Cir. 1992); *Maldonado v. Metra*, 743 F. Supp. 563, 568 (N.D. Ill. 1990) (five month lapse between protected expression and termination too remote); *Reeves v. Digital Equipment Corp.*, 710 F. Supp. 675, 677 (N.D. Ohio 1989) (no retaliation where three months passed between protected expression and adverse employment action); *Brown v. A.S.D. Computing Center*, 519 F. Supp. 1096, 1116-17 (S.D. Ohio 1981) (discharge four months after protected activity too remote). Williams has stated that she supported other employees in their efforts to enforce protected rights but has not provided any information, including the times when she claims to have provided such support, so that the court could infer a connection between them and the refusal of ACIPCO to promote her.

Because Williams cannot rely on the mere participation in the previous lawsuits or her claimed aid to others, she assumes the burden of producing some evidence to demonstrate the existence of a causal link. Simply stated, she had failed to direct the court's attention to any evidence that would provide the required causal relationship.

**IV.   Conclusion.**

In accord with the foregoing, ACIPCO's motion for summary judgment is due to be granted in all respects. The action, by separate order, will be dismissed and costs will be taxed against the plaintiff and in favor of the defendant.

Done, this 26th of May, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE